E-FILED
Tuesday, 29 September, 2026 02:33:43 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| STEPHANI ELLIS,<br><br>Plaintiff,<br><br>v.<br><br>URBANA PARC LLC d/b/a Aspen Square Management, TREV-SP LLC, and BHOM Student Living,<br><br>Defendants. | Case No.: 2:25-CV-02315-CSB-EIL |

**DEFENDANT URBANA PARC LLC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, LACK OF STANDING, AND LACK OF SUBJECT MATTER JURISDICTION**

Defendant, URBANA PARC LLC, ("UP LLC"), incorrectly sued as "URBANA PARC LLC d/b/a Aspen Square Management," by and through its attorneys, Gordon Rees Scully Mansukhani, LLP, brings this Motion to Dismiss Plaintiff's Fourth Amended Complaint (Dkt. #88) pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), and 12(b)(6). In support of its Motion to Dismiss, UP LLC states as follows:

**INTRODUCTION**

After this Court granted UP LLC's Motion to Dismiss Plaintiff's Third Amended Complaint (Dkt. #86), Plaintiff filed a 63-page Fourth Amended Complaint (Dkt. #88) which contains everything but a "short and plain statement" of the grounds for jurisdiction, the claims presented, and the relief sought. Fed. R. Civ. P. 8(a). The Fourth Amended Complaint can be

characterized as the exact opposite: a long and confusing compilation of tirades, non sequiturs, and digressions.[1] The Fourth Amended Complaint violates Federal Rule of Civil Procedure 8.

Beyond Rule 8(a), the Fourth Amended Complaint again fails to adequately plead a causal link between any cognizable injury and the alleged conduct of UP LLC. It is unclear how Plaintiff has been injured through the alleged wrongdoing in any of the causes of action asserted. Thus, Plaintiff's opaque, vague, and confusing assertions, though there may be more of them, still fail to give rise to a plausible concrete injury to confer Article III standing.

Because Plaintiff's claims arising from federal question jurisdiction must be dismissed for lack of standing and for failure to state a claim, there is no anchoring claim to confer supplemental jurisdiction of Plaintiff's state law claims. Therefore, Plaintiff's state law claims must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

Separately, Plaintiff brings new claims in her Fourth Amended Complaint, such as Count IV, pursuant to the Illinois Human Rights Act, which must be dismissed for failing to exhaust administrative remedies.[2] Plaintiff also attempts to bring claims under the Illinois Landlord Retaliation Act and the Urbana Code of Ordinances. Should the state law claims survive the above jurisdictional arguments, they are poorly pled and fail to state a plausible claim upon which relief can be granted, warranting dismissal under Federal Rule of Civil Procedure 12(b)(6).

---

[1] Concerningly, it also contains what appears to be instructions or suggestions from an artificial intelligence engine. For instance, the last sentence of Paragraph 35B states: "The exact delivery/entry date, personnel, notice, and nonemergency purpose must be fixed before this later event is used as a separate federal subclaim; it is presently pleaded as current access-and-notice context." (Dkt. #88, ¶ 35B). As another example, Paragraph 41B seems to be a statement of law generated by artificial intelligence that is not tied to any factual allegation within that paragraph, the previous paragraph, or the paragraph that follows.

[2] Plaintiff's First Amended Complaint contained similar allegations under the IHRA. (Dkt. #13). UP LLC filed a Motion to Dismiss (Dkt. #16) which included the argument that Plaintiff failed to exhaust administrative remedies. Plaintiff subsequently filed Second and Third Amended Complaints with no such allegations.

This is Plaintiff's fifth attempt at bringing a valid claim against UP LLC. It is clear she is unable to do so. Thus, Plaintiff's Fourth Amended Complaint should be dismissed, with prejudice.

## FACTUAL BACKGROUND

To recap[3], Plaintiff alleges that she resides at 1728 Melrose Village Circle, Urbana, IL 61801, which is part of a complex known or formerly known as "The Linc." (Dkt. #88, ¶ 5). Plaintiff moved into her four-bedroom apartment unit on September 1, 2022. Thereafter, on November 3, 2022, UP LLC acquired The Linc. UP LLC filed an eviction action against Plaintiff on November 3, 2025 for unpaid rent.

Plaintiff's Third Amended Complaint (Dkt. #51) brought only three causes of action: (1) Fair Housing Act (Failure to Accommodate); (2) Fair Housing Act (Retaliation); and (3) Negligence (Premises Liability). Plaintiff previously claimed that her protected disability under the Fair Housing Act is a traumatic brain injury ("TBI"). Now, in the Fourth Amended Complaint (Dkt. #88), Plaintiff alleges that she has "mobility, endurance, pain, neurological/cognitive processing, vision, and trauma-related limitations." (Dkt. #88, ¶ 8). The Fourth Amended Complaint then goes on with no less than 190 confusingly numbered paragraphs of non-chronological events that can only be described as word vomit. Each paragraph consists of multiple jumbled factual assertions and, for some reason, many of the paragraphs contain statements of what Plaintiff is *not* alleging.[4] (*See* Dkt. #88, ¶¶ 22A, 25, 28E, 28F, 31, 35, 36B, 36E, 48, 52A, 56, 61A, 67, 68G, 68H, 70A, 70B, 73D, 74AA, 78).

---

[3] For sake of brevity, UP LLC refers to the Factual Background section of its Motion to Dismiss the Third Amended Complaint. (Dkt. #57).

[4] Though, helpfully, Plaintiff makes clear that she is not bringing a claim for any sprinkler injury previously asserted (Dkt. #88, ¶ 80B) or sexual harassment (Dkt. #88, ¶ 80A).

The undersigned's best efforts in boiling down the sporadic Fourth Amended Complaint is as follows.

***Count I – FHA Failure to Accommodate***

Count I alleges Fair Housing Act ("FHA") failure to accommodate claims for failure to provide (1) a reasonable payment accommodation for Plaintiff's continuously delinquent rent payments, (2) a closer trash receptacle because the nearer two receptacles were "routinely full," (3) a closer parking space, (4) bathing safety hardware, and (5) 24-hour notice before knocking on Plaintiff's door.

***Count II – FHA Retaliation***

Count II alleges that UP LLC retaliated against Plaintiff due to her disability by (1) terminating her lease despite her acknowledged rent delinquency, and (2) denying Illinois Court-Based Rental Assistance Program ("CBRAP") financial assistance despite the requirement that UP LLC would have had to initiate eviction proceedings for Plaintiff to be qualified to receive such assistance.

***Count III – Failure to Provide Reasonable Accommodation for Gate Access (against BHOM and LINC SH)***

This cause of action is not asserted against UP LLC.

***Count IV – Illinois Human Rights Act (IHRA) Violations***

Count IV reasserts the allegations of Count I and II and asserts those as a basis for Plaintiff's IHRA claims against UP LLC. Plaintiff's First Amended Complaint contained similar allegations under the IHRA. (Dkt. #13). UP LLC filed a Motion to Dismiss (Dkt. #16) which included the argument that Plaintiff failed to exhaust administrative remedies. Plaintiff subsequently filed Second and Third Amended Complaints with no such allegations. There is no administrative charge against UP LLC and no right-to-sue letter presented.

***Count V – Illinois Landlord Retaliation Act Violations (765 ILCS 721/1, et seq.)***

This claim is derivative of Plaintiff's FHA claims. Plaintiff asserts that it was retaliatory to file an eviction action against her on September 5, 2025, dismiss without prejudice on October 27, 2025, and refile on November 3, 2025, while resolution communications were ongoing.

***Count VI – Urbana Municipal Code Violations and Retaliation***

This claim arises from an alleged attempted entry by Raelynn Henson on September 20, 2025.

***Count VII – Section 504 Rehabilitation Act Violation***

Plaintiff alleges that since she applied for CBRAP funds, UP LLC was a recipient of "federal financial assistance" under 29 USC 794(b)(3). CBRAP is a state-level program administered by the Illinois Housing Development Authority. Plaintiff erroneously claims that she was excluded from or denied benefits of a federally assisted program solely because of her disability.

Regardless of the nature of the above causes of action, none of them plausibly allege any concrete injury. Thus, Plaintiff does not show injuries that are "fairly traceable" to any conduct attributable to UP LLC. Furthermore, each cause of action fails to state a claim. As a result, the Fourth Amended Complaint must be dismissed with prejudice.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted).

A motion brought under Federal Rule of Civil Procedure 12(b)(1) is a challenge to subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy." *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 527 (7th Cir. 2001) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). "Standing is an essential component of the case-or-controversy requirement [] and consists of three familiar elements: the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)) (internal quotations omitted). Article III of the Constitution requires a concrete injury in fact—the plaintiff must allege that as a result of the defendant's actions, she has suffered "a distinct and palpable injury." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a claim if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under both a facial challenge to subject matter jurisdiction under Rule 12(b)(1) and a motion under Rule 12(b)(6), a court should use the "plausibility" requirement set forth in *Twombly* and *Iqbal*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570) (the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

## ARGUMENT

### I. Plaintiff's Fourth Amended Complaint Must be Dismissed for Failure to State a Claim Because it Violates Federal Rule of Civil Procedure 8(a).

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement" "of the grounds for the court's jurisdiction" and "of the claim showing that the pleader is entitled to relief." Fed.

R. Civ. P. 8(a)(1), (a)(2). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's claim must meet two threshold requirements. First, the complaint's factual allegations must be sufficient to give the defendant fair notice of the claim and the grounds upon which it rests. *Twombly*, 550 U.S. at 555; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). Second, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 570). While a complaint need not contain detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

*Pro se* complaints are construed liberally and held to a less stringent standard than pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Even so, *pro se* plaintiffs are not excused from meeting the basic requirements of Federal Rule of Civil Procedure 8(a), and "a pro se complaint still must provide fair notice of the plaintiff's claims and at least suggest a plausible right to relief." *Stuckey v. Housing Authority of Cook County*, 2017 WL 11606727, at *2 (N.D. Ill. Sept. 18, 2017). Further, "a *pro se* complainant can plead himself out of court by pleading facts that undermine the allegations set forth in his complaint." *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999); *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006) ("In other words, if a plaintiff pleads facts which show he has no claim, then he has pled

himself out of court."); *Peters v. Satkiewicz*, 2017 WL 2958221, at *3 (N.D. Ill. July 11, 2017); *Farris v. Vector Constr., Inc.*, No. 22-CV-2107, 2022 WL 17550727, at *6 (C.D. Ill. Nov. 28, 2022), *aff'd*, No. 22-3183, 2023 WL 4883491 (7th Cir. Aug. 1, 2023).

Here, Plaintiff's Fourth Amended Complaint contains confusing, repetitive, and jumbled averments, many of which are unrelated to the causes of action she pleads, or are not allegations at all.[5] It also references "Proposed Exhibits" that are not attached to the Fourth Amended Complaint. The allegations attempt to state that UP LLC violated the federal Fair Housing Act ("FHA") and other state, federal, and local statutes while Plaintiff resided at The Linc Apartments. The allegations are pled so inartfully that it is effectively impossible to discern what alleged harm—if any—was caused by any alleged wrongdoing, and it would be untenable for UP LLC to respond to each compound paragraph. It is apparent that the Fourth Amended Complaint violates Rule 8(a) and must be dismissed.

Therefore, Plaintiff's Fourth Amended Complaint should be dismissed for violating Federal Rule of Civil Procedure 8(a).

## II. Plaintiff's Fourth Amended Complaint Should be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(1) for Lack of Standing as there is No Fairly Traceable Concrete Injury Pled and No Available Redress.

A plaintiff must demonstrate Article III standing by showing that she "has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct and is likely to be redressed by a favorable judicial decision." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020).

[5] *See, e.g.*, Dkt. #88, ¶ 41B: "Plaintiff's requests for lever handles must be distinguished from a request for a generally remodeled apartment. Ordinary renovations promised to other units are not automatically disability accommodations. The legally relevant questions are which fixture change was necessary for equal use, whether management controlled or consented to it, whether Plaintiff offered to bear any cost required by **§3604(f)(3)(A)**, what response occurred, and what concrete bathing injury followed." There is no other reference in the Fourth Amended Complaint to a remodeled apartment or whether that was something Plaintiff requested or offered by UP LLC. It is unclear why this paragraph, among others, exists.

Article III of the Constitution requires a concrete injury in fact: that the plaintiff allege that as a result of the defendant's actions she has suffered "a distinct and palpable injury." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982).

The Supreme Court has stated that, "[f]or standing purposes ... an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426-27 (2021). Thus, even if a plaintiff has suffered an "injury in law" because of the defendant's violation of federal law, and the federal law in question creates a private right of action to vindicate that violation, the plaintiff still must show she was "concretely harmed" by the violation to establish standing to sue in federal court. *Id.* at 427.

Further, a plaintiff must maintain its "personal interest" in the case "at all stages of litigation." *Id.* "'When the issues presented are no longer live or the parties lack a cognizable interest in the outcome,' a case or controversy under Article III no longer exists because the litigation has become moot." *Brazil v. Ark. Dep't of Hum. Servs.*, 892 F.3d 957, 959 (8th Cir. 2018) (quoting Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013)). Accordingly, if a case has become moot because of changed circumstances that render effective relief impossible, a federal court "lack[s] jurisdiction and must dismiss the action." *Glow in One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1371 (8th Cir. 2022); *see also Bassett v. Credit Bureau Servs., Inc.*, 60 F.4th 1132, 1138 n.3 (8th Cir. 2023). So, when the defendant in an FHA claim no longer owns the property at issue, it can be argued that there is no case or controversy under Article III as to that defendant. *See El Camino, LLC v. City of S. Saint Paul, Minnesota*, No. 23-CV-3011 (LMP/DLM), 2025 WL 1615695, at *7 (D. Minn. June 6, 2025) (granting summary judgment on the plaintiff's FHA and

ADA claims where the defendant no longer owned the subject property). It is not enough to allege a speculative or conclusory monetary injury to confer standing. *El Camino, LLC v. City of S. Saint Paul, Minnesota*, No. 23-CV-3011 (LMP/DLM), 2025 WL 1615695, at *7 (D. Minn. June 6, 2025) (granting summary judgment on the plaintiff's FHA and ADA claims).

Paragraphs 15-17 of the Fourth Amended Complaint attempt to describe Plaintiff's injuries, but the only actual injury alleged (physical injury from a leaking outdoor spigot) is not an injury that derives from any cause of action pled, so this cannot be the basis for injury under the FHA or any other federal, state, or local statutory claim alleged. Plaintiff states that she "separately suffered loss-of-use and housing-service harms because she was never provided a working credential for the resident-only pool, clubhouse, gates, and other secured community areas…increased pain and fall risk from inaccessible routes and distant parking and trash facilities; inability to bathe safely without the requested lever-style handles; missed or threatened medical transportation; fees, notices, arrears, credit risk, and housing instability; fear and distress from entry and lock-related incidents; and loss of an opportunity to obtain court-based rental assistance." (Dkt. #88, ¶ 15). None of these are sufficiently identifiable, traceable, or actual injuries redressable by this Court through monetary or injunctive means. Further, these alleged injuries are not reasonably tied to any plausible federal-question claim. Since UP LLC no longer owns Plaintiff's unit, it is not possible for this Court to issue relief for Plaintiff and against UP LLC that would redress Plaintiff's alleged injuries, which primarily seek injunctive relief.

Just like the Third Amended Complaint, Plaintiff's Fourth Amended Complaint is opaque, vague, and confusing, and the myriad jumbled factual assertions make it untenable, if not impossible, to connect which alleged injury resulted from which alleged discriminatory act by UP LLC or to tie up any actual harm to wrongdoing potentially attributable to UP LLC. Even accepting

Plaintiff's allegations as true, Plaintiff does not show injuries that are "fairly traceable" to any conduct attributable to UP LLC. As a result, the Fourth Amended Complaint must be dismissed with prejudice.

**III. The State Law Claims Must be Dismissed for Lack of Subject Matter Jurisdiction.**

Since there is no anchoring claim vesting this Court with original jurisdiction, it "may decline to exercise supplemental jurisdiction" over the remaining claims. 28 U.S.C. § 1367(c)(3). This Court may again decline to exercise supplemental jurisdiction over Plaintiff's remaining causes of action which are purely state-law claims: Count IV (Illinois Human Rights Act (IHRA)), Count V (Illinois Landlord Retaliation Act), and Count VI (Urbana Municipal Code).

**IV. Plaintiff's Fourth Amended Complaint Should be Dismissed under Federal Rule of Civil Procedure 12(b)(6) for Failure to State Any Plausible Claim.**

The Fourth Amended Complaint is, at best, difficult to follow. It jumps around in time and is completely unclear. What can be gathered generally is that Plaintiff believes that UP LLC has not done enough to accommodate her disability or disabilities. While this may be her opinion, the Fourth Amended Complaint fails to plausibly allege that UP LLC has engaged in conduct that violates the FHA, the Rehabilitation Act, the Illinois Landlord Retaliation Act, or the Urbana Municipal Code. Additionally, Plaintiff has pled herself "out of court by pleading facts that undermine the allegations set forth in [her] complaint." *Henderson*, 196 F.3d at 846.

**A. FHA (Counts I and II) and Rehabilitation Act (Count VII) claims.**

The Fourth Amended Complaint fails to plausibly allege any FHA (Counts I and II) or Rehabilitation Act (Count VII) claims. This concerns the second prong of the *Iqbal-Twombly* analysis set forth above: that the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Additionally, there "must be enough to raise a right to relief above the

speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The FHA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1); *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018). A plaintiff may prove an FHA violation by showing: (1) disparate treatment; (2) disparate impact; or (3) a refusal to make a reasonable accommodation. *Valencia*, 883 F.3d at 967; *Cty. of Joliet v. Mid-City Nat'l Bank of Chi.*, 2014 WL 4667254, at *22 (N.D. Ill. Sept. 17, 2014), *aff'd sub nom. Cty. of Joliet, Ill. v. New W., L.P.*, 825 F.3d 827 (7th Cir. 2016).

***i. Count I – FHA Failure to Accommodate.***

Count I of Plaintiff's Fourth Amended Complaint asserts "failure to accommodate" claims for alleged failure to provide reasonable payment accommodation, trash disposal accommodation, parking accommodation, bathing safety hardware accommodation, and adhering to a 24-hour advanced notice accommodation.

To establish a *prima facie* case for failure to accommodate, a plaintiff must show: "(1) she suffers from a disability or is associated with someone with a disability; (2) defendant knows of the disability or reasonably should be expected to know of it; (3) an accommodation may be necessary to give the plaintiff an equal opportunity to use and enjoy the dwelling; and (4) the defendant refused to make a reasonable accommodation." *Stevens v. Hollywood Towers & Condo. Ass'n*, 836 F. Supp. 2d 800, 808 (N.D. Ill. 2011).

The Fourth Amended Complaint fails to identify any reasonable accommodation that UP LLC failed to implement and Plaintiff has pled herself out of a failure to accommodation claim. The facts alleged contradict a claim for failure to accommodate for the following reasons.

*First*, based on the Fourth Amended Complaint, Plaintiff apparently remains living at The Linc Apartments, or at least lived there through the time UP LLC sold the property. Plaintiff has not identified a concrete injury resulting from UP LLC's alleged failure to accommodate her proposed payment structure. She has also not plausibly alleged that any inability to make timely rent payments was due to her alleged disability or disabilities, nor has she shown that such a payment structure would have alleviated her delinquencies[6] or how such a structure was reasonable and necessary to afford her an equal opportunity to use and enjoy her housing.

*Second*, Plaintiff alleges that the trash receptacles near her unit were "routinely full" and having to carry her trash to further away receptacles caused her pain. (Dkt. #88, ¶ 41D). But Plaintiff concedes that there were closer trash receptacles available to her, that management had engaged in the interactive process with her, and that management proposed a solution that would allow Plaintiff to use an existing receptacle. (Dkt. #88, ¶ 41D). That the trash receptacles near Plaintiff were "routinely full" does not give rise to an FHA violation. The Fourth Amended Complaint fails to adequately identify how UP LLC's conduct resulted in a cognizable injury or denied her an equal opportunity to use and enjoy her dwelling. Accordingly, Plaintiff fails to state a plausible FHA claim. Further, she fails to state a concrete injury for this claim that this Court could redress.

*Third*, Plaintiff claims that UP LLC failed to assign Plaintiff a closer parking spot, but fails to allege where Plaintiff's existing spot was or how far it was from her unit. It is unclear from the Fourth Amended Complaint whether Plaintiff even had an existing spot or if there was open parking on the premises. The Fourth Amended Complaint does not allege any follow-up from Plaintiff after her March 31, 2025 request, and concedes that UP LLC did not deny Plaintiff's

[6] If Plaintiff received funds at some point after rent was due each month, those funds could have been saved and combined with the funds she received before rent was due in order to make one timely payment.

request. (Dkt. #88, ¶ 68G). Additionally, it is unclear how this Court could redress Plaintiff's alleged diminished use and enjoyment as UP LLC no longer owns or manages Plaintiff's unit, or what actual, concrete injury resulted from this situation.

*Fourth*, Plaintiff states that the twist-style shower knobs caused "increased pain, impaired her ability to turn water on and off, and made bathing less safe," (Dkt. #88, ¶ 68N), but apparently did not prevent her from showering. Additionally, it is unclear how this Court could redress Plaintiff's alleged diminished use and enjoyment as UP LLC no longer owns or manages Plaintiff's unit. Plaintiff's injuries on this claim are speculative at best.

*Five*, Plaintiff does not allege that any UP LLC employee actually entered her unit without notice. She claims that on September 20, 2025, "Hensen pounded on and manipulated or inspected the door area." (Dkt. #88, ¶ 68S). While Plaintiff claims that there was an agreement on August 19, 2024 to provide 24-hours' notice of "attempted entry" and "door activity," it is completely unreasonable to expect that UP LLC would be required to prevent anyone from knocking on Plaintiff's door without 24-hours' notice. Plaintiff does not sufficiently allege a disability that could plausibly result in the extreme reaction Plaintiff purportedly had (i.e., calling the police). And again, it is unclear how this Court could redress Plaintiff's alleged diminished use and enjoyment as UP LLC no longer owns or manages Plaintiff's unit.

In sum, Plaintiff has not shown any actual injury resulting from any of the five accommodations UP LLC allegedly failed to implement, nor does the Fourth Amended Complaint provide clear or consistent enough allegations to give rise to an inference that her requested accommodations were reasonable for any alleged disability. Critically, Plaintiff fails to plead sufficient facts to plausibly infer a nexus between her alleged disability and accommodation

requests. Therefore, Plaintiff's FHA failure to accommodate claims must be dismissed with prejudice.

### *ii. Count II – FHA Retaliation.*

Count II attempts to plead FHA retaliation against UP LLC, but again, it is unclear whether this is a disparate impact or disparate treatment claim.[7] Regardless, the Fourth Amended Complaint fails to plead either.

To state a disparate treatment claim, Plaintiff must plausibly allege that UP LLC had a discriminatory intent or motive. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009); *see Akbar v. Interstate Realty Mgmt.*, No. 1:17-CV-05447, 2022 WL 952352, at *5 (N.D. Ill. Mar. 29, 2022), *aff'd sub nom. Akbar v. Interstate Realty Mgmt. Co.*, No. 22-1598, 2022 WL 4286498 (7th Cir. Sept. 16, 2022) ("'disparate treatment' is just another way of saying intentional discrimination"). However, the Fourth Amended Complaint does not contain facts that could plausibly state a claim for intentional discrimination, or how UP LLC would have been motivated to discriminate against Plaintiff because of her disability. To the extent Plaintiff is also claiming violations of section § 3617 of the FHA, which makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of the property, Plaintiff has similarly failed to plausibly allege that (1) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) UP LLC coerced, threatened, intimidated, or interfered with the Plaintiff on account of her protected activity under the FHA, and (4) UP LLC was motivated by an intent to discriminate. *Hunter v. WPD Mgmt., LLC*, 476 F. Supp. 3d 731, 737

---

[7] Paragraph 79 confusingly states: "Plaintiff does not plead disparate impact without a specific neutral practice, protected-group disparity, reliable comparative evidence, and robust causation. Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc., 576 U.S. 519, 542 (2015), does not make every unintentional housing disparity unlawful." This paragraph is one of many examples of how difficult it is to discern what causes of action Plaintiff is attempting to bring.

(N.D. Ill. 2020). It is not enough to list certain requests for accommodation and arbitrarily state that UP LLC's failure to meet those requests was the cause of all of Plaintiff's problems. By Plaintiff's own admission, there must be some "causal connection" between the accommodation request and the adverse action. The allegations are too difficult to follow to surmise any causal connection.

Next, a potential disparate impact claim requires Plaintiff to allege facts that raise a plausible inference that UP LLC's policies "caused or predictably will cause a discriminatory effect" against a protected class. 24 CFR § 100.500(c)(1); *see Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 527 (2015). Accordingly, "[d]isparate-impact analysis looks at the effects of policies, not one-off decisions." *City of Joliet, Ill. v. New W., L.P.*, 825 F.3d 827, 830 (7th Cir. 2016) (finding no disparate impact because "condemnation of Evergreen Terrace is a specific decision, not part of a policy to close minority housing in Joliet"). Again, Plaintiff's Fourth Amended Complaint lacks any facts to show UP LLC had a policy that caused or predictably will cause a discriminatory effect against a class of disabled individuals or an otherwise protected class that Plaintiff alleges she falls within. There are examples of what Plaintiff believes are UP LLC's failure to accommodate, but no specific policies, practices, or other details to articulate a disparate impact claim.

Regardless of the retaliation theory Plaintiff might be bringing, both of them fail because the crux of her retaliation claim is UP LLC's lease termination efforts. But Plaintiff has pleaded herself out of this claim because she concedes that she had an unpaid rent balance and UP LLC even offered payment plans, as well as the fact that termination efforts began *before* Plaintiff filed an IDHR and other administrative charges against *Aspen Square Management*. (Dkt. #88, ¶¶ 69A, 70). To the extent Plaintiff wishes to lean on the CBRAP application as stated in Paragraph 70A,

Plaintiff also admits that in order to qualify for CBRAP assistance, UP LLC would have had to initiate eviction proceedings. So, Plaintiff apparently wanted to face eviction proceedings so she could potentially receive CBRAP funds, which completely contradicts her claim that UP LLC unfairly attempted to evict her later. UP LLC owed no duty to seek an eviction of Plaintiff just so she could receive CBRAP funds.

For the above reasons, Plaintiff's claims brought under the FHA should be dismissed, with prejudice.

***iii. Rehabilitation Act.***

Section 504 of the Rehabilitation Act provides that no disabled individuals "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a); *A.H. by Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018). There is no allegation that UP LLC is a "program or activity receiving Federal financial assistance." The Illinois Court-Based Rental Assistance Program ("CBRAP") was a state-mandated program administered by the Illinois Housing Development Authority.[8] The program provided emergency rental assistance to tenants and landlords who have pending cases in eviction court who face financial instability due to the COVID-19 pandemic.[9] Receipt of funds under CBRAP was a case-by-case basis. There are insufficient allegations to establish that UP LLC was a program or activity receiving Federal financial assistance, nor are there sufficient allegations to show that Plaintiff was "excluded from the participation in, [] denied the benefits

---

[8] https://www.ihda.org/about-ihda/cbrap/

[9] https://www.illinoiscourts.gov/News/1009/Courtbased-rental-assistance-program-What-does-this-mean-for-your-court/news-detail/

of," or "subjected to discrimination under any program or activity" of UP LLC on the sole basis of her disability. 29 U.S.C. § 794(a).

Count VII therefore must be dismissed, with prejudice.

**B. The Illinois Landlord Retaliation Act and the Urbana Code of Ordinances.**

The Illinois Landlord Retaliation Act, 765 ILCS 721/1, *et seq.*, forbids landlords from taking retaliatory action against a tenant based on the tenant's involvement in a protected activity—for example, by exercising "any right or remedy provided by law." *Jefferson v. Landmark Apartment Assocs.*, No. 1:25-CV-01161-MMM-RLH, 2026 WL 496643, at *4 (C.D. Ill. Feb. 23, 2026) (quoting 765 ILCS 721/5(7)). Here, Plaintiff concedes she had an unpaid rent balance and UP LLC offered payment plans, as well as the fact that termination efforts began *before* Plaintiff filed an IDHR and other administrative charges against *Aspen Square Management*. (Dkt. #88, ¶¶ 69A, 70). These are legitimate non-retaliatory actions under 765 ILCS 721/15. Further, for the other reasons Plaintiff has failed to plausibly establish a retaliatory action under the FHA, the Fourth Amended Complaint fails to adequately plead retaliation under the Illinois Landlord Retaliation Act, and Count V must be dismissed with prejudice.

Section 12.5-15 of the Urbana Code of Ordinances prohibits a landlord from entering a rental unit "without first providing the tenant with at least twenty-four (24) hours advance notice of the entry." Urbana Code Ord. Sec. 12.5-15. Under the relevant Ordinances, a tenant may only recover if the landlord makes unlawful entry or "if the landlord makes repeated demands for entry otherwise lawful, but which have the effect of harassing the tenant after being notified in writing by the tenant that tenant feels harassed by such repeated demands." Urbana Code Ord. Sec. 12.5-16. Here, Plaintiff does not allege that UP LLC ever actually entered her unit. She also fails to assert that UP LLC made "repeated demands for entry" or that Plaintiff notified UP LLC that she

felt harassed by repeated demands for entry. The Fourth Amended Complaint describes a single occurrence on September 20, 2025, when someone knocked on her door. (Dkt. #88, ¶ 74L). This is insufficient to state a claim under the Urbana Code of Ordinances, and Count VI must be dismissed with prejudice.

## V. Plaintiff's Causes of Action Brought under Illinois Human Rights Act Must be Dismissed for Failure to Exhaust Administrative Remedies.

Count IV must be dismissed because Plaintiff failed to exhaust the required administrative remedies. "The Illinois Human Rights Act requires a complainant to exhaust administrative remedies before filing a civil lawsuit." *Jafri v. Signal Funding, LLC*, No. 22-2394, 2022 WL 17718429, at *2 (7th Cir. Dec. 15, 2022), *cert. denied*, 144 S. Ct. 87 (2023). Specifically, under the IHRA's exhaustion requirement, a complainant must file a charge with the Illinois Department of Human Rights ("IDHR") within the statutory time allowed, which was 300 days in 2023 and is two years as of January 1, 2025. 775 ILCS 5/7A-102(A)(1); 775 ILCS 5/7A-102(A)(1) (effective August 20, 2021 to December 31, 2023). Once the IDHR either investigates the allegations and issues a report or fails to issue a report within 365 days, a complainant has 90 days to either proceed before the Illinois Human Rights Commission or file a civil action. 775 ILCS 5/7A-102(G). *Johnson v. FirstKeyHomes LLC,* No. 23 C 5165, 2025 WL 343469, at *2 (N.D. Ill. Jan. 30, 2025).

Here, Plaintiff has not pled that she received a right-to-sue letter from the Commission for the claims set forth in Count IV or any claims against UP LLC that could be brought under the Illinois Human Rights Act. Therefore, any claim under the Illinois Human Rights Act that could be drawn from Plaintiff's Fourth Amended Complaint should be dismissed for failure to exhaust administrative remedies.

## CONCLUSION

Plaintiff's Fourth Amended Complaint is confusing and fails to provide a clear and coherent statement of the claims asserted against UP LLC. When read as a whole, the Fourth Amended Complaint fails to state any plausible claim for relief against UP LLC or fairly traceable concrete injury. It is even more clear now that Plaintiff cannot pursue any claims in this Court. Therefore, the Fourth Amended Complaint must be dismissed with prejudice in its entirety.

Respectfully submitted,

**Gordon Rees Scully Mansukhani, LLP**

By: /s/ Hayes Ryan
*Attorney for Defendant*
*Urbana Parc, LLC*

J. Hayes Ryan
**Gordon Rees Scully Mansukhani, LLP**
One North Wacker Drive, Suite 1600
Chicago, Illinois 60606
(312) 565-1400 (Telephone)
(312) 565-6511 (Facsimile)
hayesryan@gordonrees.com

**Type Volume Certification**

Pursuant to Local Rule 7.1(B)(4), the undersigned certifies that the foregoing complies with the type volume limitation as it contains 6,066 words.

/s/ Hayes Ryan
*Attorney for Defendant*
*Urbana Parc, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties of record, and sent a copy of the foregoing document via first class mail, postage prepaid, addressed to:

***Pro Se Plaintiff***
Stephani Ellis
301 S. Vine Street
Suite 103
Urbana, IL 61801

Respectfully submitted,

**Gordon Rees Scully Mansukhani, LLP**

By: /s/ Hayes Ryan
*Attorney for Defendant*
*Urbana Parc, LLC*

J. Hayes Ryan
**Gordon Rees Scully Mansukhani, LLP**
One North Wacker Drive, Suite 1600
Chicago, Illinois 60606
(312) 565-1400 (Telephone)
(312) 565-6511 (Facsimile)
hayesryan@gordonrees.com